UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARMEEN S. JONES,<br><br>                Plaintiff,<br><br>-against-<br><br>FOX NEWS NETWORK; WILLIAM TOTH; STEVE CAREY; JASON OSTER; DAMIEN RODRIGUEZ; SEAN MCCOOL; and MIKE GRECO, in their individual and official capacities,<br><br>                Defendants. | Index No.: 10 CV 7967 (PKC)<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY DEMAND AS TO ALL COUNTS** |

       Plaintiff, HARMEEN S. JONES ("Jones"), by and through his attorney, David B. Rankin, of the Law Office of Rankin & Taylor, as and for his Complaint against Defendants, respectfully sets forth the following:

    1.    This action is hereby commenced for the purpose of seeking to secure protection of, and to redress the deprivation of, rights secured by 42 U.S.C. § 1981, *et seq*. ("§ 1981"), 42 U.S.C. § 2000e, *et seq*. ("Title VII"), the New York State Human Rights Law, Executive Law § 290, *et seq*. ("New York State Human Rights Law"), and the Administrative Code of the City of New York Section 8-101, *et seq*. ("New York City Human Rights Law").

**JURISDICTION AND VENUE**

    2.    The jurisdiction of this court is invoked based upon federal question and pursuant to 28 U.S.C.A §§ 1343 and 42 U.S.C.A. §1981; this being a proceeding seeking to enforce rights and remedies secured under Title VII of the Civil Rights Act of 1964.

3.      The Court's supplemental and pendent jurisdiction is invoked via Plaintiff's claims arising under the laws of the State of New York and City of New York, pursuant to 28 U.S.C. Section 1367(a) because the claims are so related to Plaintiff's federal claims they form part of the same case or controversy.

4.      Venue is proper in United States District Court, Southern District Of New York because the unlawful employment practices were committed by Defendants in the Southern District of New York.

## PARTIES

5.      Plaintiff Jones is a 32-year-old African-American citizen of the United States. Plaintiff resides at 985 Lafayette Avenue, Brooklyn, New York 11221.

6.      Upon information and belief, Defendant FOX NEWS NETWORK, LLC ("FNN") is a foreign corporation in the cable news and entertainment industry, created and organized under the laws of Delaware with its principal place of business at 1211 Avenue of the Americas, New York, New York 10036.

7.      Upon information and belief, Defendant WILLIAM "Billy" TOTH ("Toth") is a Director of Operations at FNN and one (1) of Plaintiff Jones' supervisors, and was acting in such capacity at all times relevant herein; he is being sued in his individual and official capacity.

8.      Upon information and belief, Defendant STEVE CAREY ("Carey") is a Director of Operations at FNN and one (1) of Plaintiff Jones' supervisors, and was acting in such capacity at all times relevant herein; he is being sued in his individual and official capacity.

9.      Upon information and belief, Defendant JASON OSTER ("Oster") is a Technical Manager at FNN and in a higher employment position than Plaintiff Jones , and was a de-facto supervisor of Plaintiff Jones' department and was acting in such capacity at all times relevant herein; he is being sued in his individual and official capacity.

10. Upon information and belief, Defendant DAMIEN RODRIGUEZ ("Rodriguez") is a Transmission Operator at FNN, and was acting in such capacity at all times relevant herein; he is being sued in his individual and official capacity.

11. Upon information and belief, Defendant SEAN MCCOOL ("McCool") is a Transmission Operator at FNN, and was acting in such capacity at all times relevant herein; he is being sued in his individual and official capacity.

12. Upon information and belief, Defendant MIKE GRECO ("Greco") is a Remote Coordinator at FNN, and was acting in such capacity at all times relevant herein; he is being sued in his individual and official capacity.

13. Each and all of the acts of the Defendants alleged herein were done by said defendants while acting within the scope of their employment by Defendant FNN.

14. Each and all of the acts of the Defendants alleged herein were done by said defendants while acting in furtherance of their employment by Defendant FNN.

15. At all times relevant herein, Defendants have violated clearly established Federal, State, and City standards, codes and regulations of which a reasonable agent, employee or servant under their respective circumstances would have known.

## SATISFACTION OF PREREQUISITES UNDER TITLE VII

16. In December of 2009, Plaintiff Jones, in accordance with applicable law, filed a Verified Complaint with the United States Equal Employment Opportunity Commission ("EEOC"), which organization receives and investigates charges of discrimination as set forth by the Federal Anti-Discrimination Laws, including Title VII of the Civil Rights Act, as amended.

17. Said Verified Complaint charged that Defendants engaged in unlawful employment discrimination practices bases upon race.

18. On August 6, 2010 the EEOC issued a "Right to Sue" Letter advising Plaintiff of the completion of his prerequisites to file suit in federal court. A copy of the "Right to Sue" Letter issued to Plaintiff is annexed hereto as Exhibit A.

**FACTS UNDERLYING PLAINTIFF'S CLAIMS**

19. Plaintiff Jones started at FNN in 2005 as a freelance Intake Operator. In 2007, Plaintiff Jones was promoted to full-time as a Remote Coordinator, a title later changed to Acquisitions Coordinator.

20. Plaintiff Jones primarily worked in room referred to initially as "intake" and later as "acquisitions" where feeds from FNN cameras all over the world came together. The room was set up like a theatre, with a wall of screens in the front showing the feeds and several rows of control stations facing it.

21. Plaintiff Jones' job was to monitor, record and pass on the feeds for broadcast.

22. Throughout his employment at FNN, Plaintiff Jones sat in the row of control stations behind Defendants Greco, McCool, and Rodriguez — about 5-6 feet away. From this vantage point, Plaintiff Jones had no choice but to listen to everything these Defendants said.

23. Defendants Greco, McCool, and Rodriguez continually made racist, sexist, and extremely offensive comments throughout the course of every working day. These comments concerned African-Americans, Arabs, Muslims, Hispanics, women, and Jews.

24. Throughout his entire time at FNN, Plaintiff Jones was treated in a hostile and threatening way due to his identification with the African-American race by Defendants Greco, McCool, and Rodriguez through a consistent and relentless barrage of racist verbal attacks and demeaning comments.

25. Defendants' offensive conduct significantly altered the conditions of Plaintiff Jones' professional working environment by instilling daily abuse, fear and humiliation in Plaintiff while employed by Defendants.

26. One incident occurred during the debate over health care. While a few of the screens in the intake room were showing footage from a "tea party" rally on healthcare reform, Defendant McCool turned to Plaintiff Jones and said, in sum and substance, "this is what happens when you mess with white people's health care."

27. Another incident occurred during the 2008 presidential election campaign. Defendants Greco and McCool, sitting a few feet in front of Plaintiff Jones, discussed how they wouldn't feel comfortable having a black president. Defendant Greco then looked at Plaintiff Jones and on information and belief saw that his comments had made him offended and uncomfortable.

28. Defendant Greco then said, in sum and substance, "am I offending your blackness?"

29. Throughout Plaintiff Jones' employment, Defendants Greco, McCool, and Rodriguez constantly told him in sum and substance "you look like a gangster" and "like you're ready to shoot someone."

30. Plaintiff Jones was subject to racist and demeaning comments at least every-other day throughout his employment at FNN.

31. The racist comments Plaintiff Jones was constantly subjected to caused embarrassment, fear, and humiliation and made him feel like he is somehow less than fully human because he is African-American.

32. Throughout his employment at FNC, Defendants Greco, McCool and Rodriguez almost always pretended not to hear when Plaintiff Jones made transmission requests, making it difficult for him to perform his job. Towards the end of Plaintiff Jones' employment at FNN, FNC, Defendants Greco, McCool and Rodriguez would become openly hostile and abusive towards Plaintiff nearly every time he spoke to them.

33. In response, Plaintiff Jones learned how to do the transmission work on his own, and avoided as much as possible having to interact with the Defendants.

34. Plaintiff Jones was subjected to very different standards of employment than other FNN employees.

35. Plaintiff was capable of, and often performed, far more than his assigned duties. In addition to performing his own job, Plaintiff Jones often performed the jobs of other FNN employees who were absent or asleep.

36. On many occasions Plaintiff Jones would take over the role of his absent supervisor, performing the duties of the transmission operator, or on other occasions, the role of his absent supervisor's supervisor, the technical supervisor.

37. Often times the absent employees were walking around the office and chatting with other employees or asleep at their desks. On information and belief, these employees were never reprimanded for not doing their work.

38. On one occasion Plaintiff Jones was waiting for a show to begin with his eyes closed, which he was reprimanded for.

39. Plaintiff Jones was often blamed for mistakes he did not, and could not, have any control over. For example, Plaintiff Jones was blamed when a box in Washington, D.C. malfunctioned on one of his feeds.

40. Plaintiff Jones was always denied requests for technical training, without ever being given a reason. Other employees who were less senior or at the same level were often paid to train.

41. Two (2) employees who started after Plaintiff Jones and whom Plaintiff Jones was responsible for training were promoted above his position of acquisitions coordinator.

42. Defendant Toth often refused to allow Plaintiff Jones to take sick days. When he called in sick, Defendant Toth would talk Plaintiff Jones out of it by making him feel guilty, saying, in sum and substance, that he was needed to run acquisitions, and that they could not replace him on such short notice.

43. On information and belief, other employees were able to call in an hour before they were supposed to appear, often leaving Plaintiff Jones to cover for them.

44. Plaintiff Jones was subject to physical threats because of his race.

45. On February 18, 2009, Plaintiff Jones was arranging a feed with a technician in the field, when he was interrupted by Defendant Rodriguez.

46. Defendant Rodriguez was told by Plaintiff Jones' supervisor, Defendant Oster, in sum and substance, "this has nothing to do with you, Damien."

47.   Defendant Rodriguez responded, in sum and substance, "everything in this room has something to do with me."

48.   Plaintiff Jones continued with his work and did not respond.

49.   Defendant Rodriguez continued, in sum and substance, "that's your problem, you don't listen."

50.   Plaintiff Jones responded, in sum and substance, "this has nothing to do with you."

51.   Defendant Rodriguez approached Plaintiff Jones, standing three (3) feet in front of him while waving his arms around above his head in a threatening manner, and said, in sum and substance, "I'm the reason you got hired, and if wasn't for me you'd be fired. You must think I'm a punk, we can take this to the streets."

52.   Plaintiff Jones responded, in sum and substance, "take it to the streets?"

53.   While continuing to move his arms around in a threatening manner, Defendant Rodriguez responded, in sum and substance, "you know what I'm saying. You know what I'm saying."

54.   Defendant Oster, sometime shortly after February 18, 2009, was a technical manager and assumed greater day to day responsibilities of Plaintiff's department. As such, he was Plaintiff's de-facto supervisor.

55.   Defendant Oster then pulled Plaintiff Jones aside. Plaintiff Jones was so upset by Defendant Rodriguez he was crying.

56.   Defendant Oster later called a meeting with Plaintiff Jones and his other supervisors. At the meeting, Defendants Carey, Oster, and Toth spoke with Jones about Defendant Rodriguez. Defendant Toth said in sum and substance "you've been here for years, and this is still going on? We will speak with Damien."

57.   Defendant Oster stated to Plaintiff that he would talk to Defendants Toth and Carey about the racist statements.

58.   Defendant Rodriguez was called in to a meeting, but on information and belief he was not reprimanded. Defendant Rodriguez came back from the meeting laughing,

saying in sum and substance, Plaintiff Jones is a "snitch," and "Billy is our boy; you can run and tell the boss whatever you want to tell him but it doesn't matter because he's going to believe what I say anyway."

59. Defendant Rodriguez then told Defendant McCool, in sum and substance, "Don't worry about it; Harmeen isn't going to be here long."

60. After the incident, the working environment got markedly worse for Plaintiff Jones. Defendants Greco, McCool, and Rodriguez continued making offensive and racist comments about Plaintiff Jones.

61. On information and belief, Defendant Oster was aware of Defendants Greco, McCool, and Rodriguez' racists statements and did nothing to prevent or stop them.

62. Defendants Greco, McCool, and Rodriguez became more abusive towards Plaintiff Jones. On many occasions they got angry and became verbally abusive towards Plaintiff Jones when he spoke to them.

63. Exhausted by years of harassment, Plaintiff Jones was at a loss for what to do.

64. On information and belief, FNN's employee handbook contained inadequate information on what to do or who to talk to about racial harassment or discrimination and was not made available to Plaintiff.

65. Plaintiff Jones spoke with other African-American FNN employees about the harassment, who told him to keep his head down and not say anything.

66. Plaintiff Jones consulted his co-workers, who told him there was no point in mentioning the racist comments and difficult work environment to Human Resources because they were friends with the people who were causing him difficulty.

67. On September 2, 2009, Plaintiff Jones had his second employee review. He was given poor feedback based on reasons that were factually inaccurate, or based on incidents that had occurred at least a year before and had already been resolved with his supervisors.

68. After the review, Plaintiff Jones thought it was clear the Defendants were looking for a pretext to fire him. Plaintiff Jones decided to speak with Veracil Vega, the

head of Human Resources for FNN's parent company News Corp in hopes of resolving the issue.

69. Plaintiff Jones had a productive meeting with Ms. Vega, who seemed to care about the difficulties he was facing and wanted to help him.

70. Ms. Vega set up a meeting with Defendants Carey, Oster, and Toth, for September 24, 2009. At the meeting, Plaintiff Jones told Defendants Carey, Oster and Toth he wanted the racist and abusive comments to stop. Plaintiff left the meeting with the impression the difficulties he was facing would be resolved.

71. On information and belief, after Plaintiff left this meeting, the meeting continued and a decision was made by the defendants to terminate Plaintiff Jones in retaliation for his complaints.

72. One half hour before the end of the day on the following Friday, October 2, 2009, Defendant Toth called Plaintiff Jones into a meeting in his office. Defendant Carey was also present.

73. Defendant Carey said, in sum and substance, "we gave you a chance, and you repay us by making complaints to HR? You're terminated."

## CAUSES OF ACTION

### AS FOR THE FIRST CAUSE OF ACTION
### 42 U.S.C. § 1981

74. Plaintiff re-alleges the allegations of ¶¶ 1-73 and incorporates them by reference herein.

75. By the acts and practices described above, Defendants violated 42 U.S.C. § 198,1 which prohibits discrimination and retaliation on the basis of race in the making and enforcing of contracts.

76. Defendants knew their actions constituted unlawful discrimination on the basis of race and/or showed reckless disregard for Plaintiff's statutorily protected rights.

77. As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from his employment with the Defendants, as well as embarrassment, humiliation, and mental and emotional distress as a consequence of the Defendant's actions.

78. Because of the foregoing, Plaintiff has been damaged in the amount of THREE MILLION DOLLARS ($3,000,000.00).

## AS FOR THE SECOND CAUSE OF ACTION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## COUNT ONE — UNLAWFUL DISCRIMINATION

79. Plaintiff re-alleges the allegations of ¶¶ 1-73 and incorporates them by reference herein.

80. By the acts and practices described above, Defendant FNN violated 42 U.S.C. § 2000e-2(a)(1) which makes it an unlawful employment practice to "discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

81. Defendant FNN knew its actions constituted unlawful discrimination on the basis of race and/or showed reckless disregard for Plaintiff's statutorily protected rights.

82. As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from his employment with the Defendant FNN, as well as embarrassment, humiliation, and mental and emotional distress as a consequence of Defendant FNN's actions.

83. Because of the foregoing, Plaintiff has been damaged in the amount of THREE MILLION DOLLARS ($3,000,000.00).

## AS FOR THE THIRD CAUSE OF ACTION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## COUNT TWO — UNLAWFUL RETALIATION

84. Plaintiff re-alleges the allegations of ¶¶ 1-73 and incorporates them by reference herein.

85. By the acts and practices described above, Defendant FNN have retaliated against Plaintiff for having complained about discrimination on the basis of race in violation of Title VII.

86. Defendant FNN knew their actions constituted unlawful retaliation on the basis of race and/or showed reckless disregard for Plaintiff's statutorily protected rights.

87. As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from his employment with the Defendant FNN, as well as embarrassment, humiliation, and mental and emotional distress as a consequence of the Defendant FNN's actions.

88. Because of the foregoing, Plaintiff has been damaged in the amount of THREE MILLION DOLLARS ($3,000,000.00).

## AS FOR THE FOURTH CAUSE OF ACTION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## COUNT THREE — HOSTILE WORK ENVIRONMENT

89. Plaintiff re-alleges the allegations of ¶¶ 1-73 and incorporates them by reference herein.

90. By the acts and practices described above, Defendant FNN have created and subjected Plaintiff to a hostile work environment because of his race, in violation of Title VII.

91. Defendant FNN knew their actions created a hostile work environment on the basis of race and/or showed reckless disregard for Plaintiff's statutorily protected rights.

92. As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from his employment

with the Defendant FNN, as well as embarrassment, humiliation, and mental and emotional distress as a consequence of the Defendant FNN's actions.

93. Because of the foregoing, Plaintiff has been damaged in the amount of THREE MILLION DOLLARS ($3,000,000.00).

### AS FOR THE FIFTH CAUSE OF ACTION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### COUNT FOUR — WRONGFUL TERMINATION

94. Plaintiff re-alleges the allegations of ¶¶ 1-73 and incorporates them by reference herein.

95. By the acts and practices described above, Defendant FNN have discriminated against Plaintiff on the basis of race in violation of Title VII.

96. Plaintiff, as an African-American is a member of a protected class and suffered an adverse employment action when he was fired as described further *supra*, although he was highly qualified to work as an Acquisitions Coordinator at FNN.

97. Defendant FNN knew their actions constituted unlawful wrongful termination on the basis of race and/or showed reckless disregard for Plaintiff's statutorily protected rights.

98. As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from his employment with the Defendant FNN, as well as embarrassment, humiliation, and mental and emotional distress as a consequence of the Defendant FNN's.

99. Because of the foregoing, Plaintiff has been damaged in the amount of THREE MILLION DOLLARS ($3,000,000.00).

### AS FOR THE SIXTH CAUSE OF ACTION
### NEW YORK STATE HUMAN RIGHTS LAW
### COUNT ONE — UNLAWFUL DISCRIMINATION

100. Plaintiff re-alleges the allegations of ¶¶ 1-73 and incorporates them by reference herein.

101. Defendants discriminatorily terminated Plaintiff in violation of New York Executive Law § 296, *et seq*.

102. As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from his employment with the Defendants, as well as embarrassment, humiliation, and mental and emotional distress as a consequence of the Defendant's actions.

103. Because of the foregoing, Plaintiff has been damaged in the amount of THREE MILLION DOLLARS ($3,000,000.00).

### AS FOR THE SEVENTH CAUSE OF ACTION
### NEW YORK STATE HUMAN RIGHTS LAW
### COUNT TWO — UNLAWFUL RETALIATION

104. Plaintiff re-alleges the allegations of ¶¶ 1-73 and incorporates them by reference herein.

105. Defendants discriminatorily retaliated against Plaintiff for having complained about discrimination on the basis of race in violation of New York Executive Law § 296, *et seq*.

106. As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from his employment with the Defendants, as well as embarrassment, humiliation, and mental and emotional distress as a consequence of the Defendant's actions.

107. Because of the foregoing, Plaintiff has been damaged in the amount of THREE MILLION DOLLARS ($3,000,000.00).

### AS FOR THE EIGHTH CAUSE OF ACTION
### NEW YORK CITY HUMAN RIGHTS LAW
### COUNT ONE — UNLAWFUL DISCRIMINATION

108. Plaintiff re-alleges the allegations of ¶¶ 1-73 and incorporates them by reference herein.

109. Defendants discriminated against Plaintiff on the basis of his race in violation of New York City Human Rights Law, Administrative Code § 8-101, *et seq*.

110. As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from his employment with the Defendants, as well as embarrassment, humiliation, and mental and emotional distress as a consequence of the Defendant's actions.

111. Because of the foregoing, Plaintiff has been damaged in the amount of THREE MILLION DOLLARS ($3,000,000.00).

### AS FOR THE NINTH CAUSE OF ACTION
### NEW YORK CITY HUMAN RIGHTS LAW
### COUNT TWO — UNLAWFUL RETAILATION

112. Plaintiff re-alleges the allegations of ¶¶ 1-73 and incorporates them by reference herein.

113. Defendants discriminatorily retaliated against Plaintiff in violation of the New York City Human Rights Law, New York Administrative Code § 8-101, *et seq*.

114. As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from his employment with the Defendants, as well as embarrassment, humiliation, and mental and emotional distress as a consequence of the Defendant's actions.

115. Because of the foregoing, Plaintiff has been damaged in the amount of THREE MILLION DOLLARS ($3,000,000.00).

**AS FOR THE TENTH CAUSE OF ACTION**
**NEW YORK CITY HUMAN RIGHTS LAW**
**COUNT THREE — UNLAWFUL HARASSMENT**

116. Plaintiff re-alleges the allegations of ¶¶ 1-73 and incorporates them by reference herein.

117. Defendants discriminatorily harassed Plaintiff on the basis of his race, denying him many of the benefits and privileges of employment other employees were entitled to, and creating a work environment where Plaintiff faced constant humiliation in violation of the New York City Human Rights Law, New York Administrative Code § 8-101, *et seq*.

118. As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from his employment with the Defendants, as well as embarrassment, humiliation, and mental and emotional distress as a consequence of the Defendant's actions.

119. Because of the foregoing, Plaintiff has been damaged in the amount of THREE MILLION DOLLARS ($3,000,000.00).

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief:

1. Declaring the aforementioned discriminatory actions of Defendants in violation of Plaintiff's statutory rights.

2. Granting Plaintiff money damages in the amount of no less than THREE MILLION DOLLARS ($3,000,000.00) in compensatory damages or in an amount to be proven at trial for each cause of action;

3. Granting Plaintiff, TWO MILLION DOLLARS ($2,000,000.00) in punitive damages;

4. Granting Plaintiff injunctive relief;

5. Granting Plaintiff all costs for this action, including reasonable attorneys fees incurred by Plaintiff; and

6. Granting Plaintiff such other and further relief as may be just and proper.

## JURY TRIAL

Plaintiff requests a jury trial on all questions of fact raised by this complaint.

Dated: December 3, 2011
New York, New York

Respectfully Submitted,

By:_____
David B. Rankin
Law Office of Rankin & Taylor
Attorneys for Plaintiff
350 Broadway, Suite 700
New York, NY 10013
212-226-4507